# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROGER BUEHL,           :     CIVIL NO. 3:CV-10-2288
          Plaintiff,    :
                   :     (Judge Munley)
        v.          :
                   :
JON FISHER, et al.,      :
          Defendants   :

## MEMORANDUM

Plaintiff Roger Buehl ("Buehl" or plaintiff), at all times relevant, an inmate incarcerated at the State Correctional Institution at Smithfield (SCI-Smithfield), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging First Amendment retaliation claims and Fourteenth Amendment due process claims. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 43). Buehl alleges eight separate causes of action which are identified in the amended complaint as Count I through Count VIII. Named as defendants are the following SCI-Smithfield officials/employees: Jon D. Fisher, Superintendent ("Fisher"); Paul K. Smeal ("Smeal"), former Superintendent; Lisa Hollibaugh ("Hollibaugh"), Superintendent's Assistant; Daniel Myers ("Myers"), Intelligence Captain; Rodney Painter ("Painter"), Lieutenant; Kevin Smith ("Smith"), Corrections Officer; Donald Sullivan ("Sullivan"), Corrections Officer; Dorina Varner ("Varner"), Chief Grievance Officer; Charles Mitchell ("Mitchell"), Hearing Examiner; R. Susan Hannah ("Hannah"), Deputy Superintendent for Facility Management; Todd Robinson ("Robinson"), Major; and Joseph Eichenlaub ("Eichenlaub"), Lieutenant. Presently pending

is defendants' motion to dismiss in which defendants seek to dismiss all but Counts IV and V

of the amended complaint. (Doc. 51.) For the reasons set forth below, the motion will be

granted in part and denied in part.

## I.    **Standard of Review**

The applicable standard of review for the failure to state a claim provision is the same

as the standard for a 12(b)(6) motion, which provides for the dismissal of complaints that fail

to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).   When ruling on

a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual]

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and

view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177

(3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).   Although the

court is generally limited in its review to the facts contained in the complaint, it "may also

consider matters of public record, orders, exhibits attached to the complaint and items

appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d

1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d

1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant

notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of

Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U. S.

544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).   The plaintiff must present facts that, if

true, demonstrate a plausible right to relief.   See FED. R. CIV. P. 8(a) (stating that the

2

complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, 556 U.S. 362, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110–111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

## II.   Administrative Exhaustion

Defendants first contend that prior to filing this suit, Buehl failed to exhaust his administrative remedies with respect to Count I, Count II against Smeal, Myers and Varner, and Count III. (Doc. 57, p. 12-16,19-20, 22-24). Section 1997e(a) of title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under Section

3

1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead." Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).

Although defendants make a compelling argument for dismissal on the basis of non-exhaustion, they have done so by filing a motion to dismiss. Granting a failure to exhaust argument raised *via* a motion to dismiss is only appropriate where the face of the pleadings demonstrate non-exhaustion (*i.e.* the complaint concedes non-exhaustion.) See Ball v. SCI Muncy, 2010 WL 2600728 (3d Cir. June 30, 2010). Since there is no such concession in the Amended Complaint, defendants' argument that plaintiff failed to exhaust his administrative remedies with respect to Counts I-III is not properly asserted in a motion to dismiss. See King v. Doe, 2011 WL 2669221 *3–4 (D.Del. July 6, 2011).

## II.   Allegations of the Amended Complaint[1]

Beginning in 2007, while incarcerated at SCI-Smithfield, Buehl submitted numerous

---

[1]Because defendants sought to dismiss Count I solely on the ground of failure to exhaust, only the allegations contained in Counts II, III, VI-VIII are pertinent.

4

requests to staff, grievances, and grievance appeals regarding the practices of shortening or canceling outdoor yard due to inclement weather and refusing to provide indoor exercise when yard was cancelled. (Doc. 43, ¶ 35.) He also submitted written requests and appeals to the DOC, pursuant to Pennsylvania's Right to Know Act (RTKA), 65 P.S. §§ 66.1, *et seq.*, seeking access to DOC and SCI-Smithfield definitions of "inclement weather." (Id. at ¶ 39.) His requests were denied on the ground that the definition constituted a "personal security exception" under the RTKA. (Id. at ¶ 40.)

In January 2008, plaintiff appealed to the Commonwealth Court which held that the claimed security concerns were speculative and were outweighed by the public interest in access to the "inclement weather" definition. (Doc. 43, ¶ 41.) In accordance with the Commonwealth Court order, the DOC provided plaintiff with two policy documents containing the definition. (Id. at ¶ 42.)

SCI-Smithfield continued to cancel yard even when weather conditions were not inclement as defined by the policy documents received by plaintiff. (Doc. 43, ¶ 43.) This prompted the filing of additional grievances and appeals, none of which succeeded in changing the SCI-Smithfield yard practices. (Id. at ¶ 44.) On August 19, 2009, Buehl filed a mandamus action in the Commonwealth Court seeking an order requiring SCI-Smithfield officials to comply with "the state statutory mandates of 61 Pa. C.S. § 5901, to correct SCI-Smithfield yard/exercise practices. See Buehl v. DOC, et al., No 435 MD 2009." (Id. at ¶ 45.)

### A.    Count II

In April 2008, officials at SCI-Smithfield confiscated several docket reports sent to plaintiff through the mail on the basis that they "were prohibited, as 'contraband,' under DOC policy DC-ADM 003 because they contained 'information pertaining to another inmate'." (Doc. 43, ¶¶ 80-81.)  Plaintiff grieved the issue and on June 30, 2008, former Chief Grievance Officer Cindy Watson stated in the Final Appeal Decision that "court docket entries do not qualify as information regarding another inmate as that term is intended in DC-ADM 003." (Id. at ¶ 83.)  Thereafter, plaintiff was permitted to receive and possess docket reports.

On September 18, 2009, with the approval of defendants Hollibaugh and Varner, defendant Painter confiscated several docket reports which had been sent to plaintiff through the mail. (Doc. 43, ¶¶ 86-89.)  Because the docket reports confiscated in September 2009, differed in no material respect from the docket reports at issue in April 2008, plaintiff filed a grievance asking defendant Hollibaugh to "look into the matter and informing her that the issue of court docket reports had been resolved in his favor in June 2008 by the Chief Grievance Officer. . . ." (Id. at ¶ ¶ 90-91.)  Hollibaugh informed plaintiff that "the presence of information related to another inmate is considered contraband, even though it may be public information. . ." (Id. at ¶ 92.)  Defendants Myers and Smeal upheld Hollibaugh's decision. (Id. at ¶ 93.)  He pursued a final appeal decision to defendant Varner, who upheld the decisions of Myers, Smeal and Hollibaugh. (Id. at ¶ 96.)  He alleges that "Defendants' arbitrary reversal of DOC policy caused Plaintiff to feel intimidated; deprived Plaintiff of his

6

right under state law to access public court records; and undermined Plaintiff's reliance on the finality of DOC final review decisions." (Id. at ¶ 101.)

Based on the above, plaintiff alleges that defendants Smeal, Painter, Myers, Hollibaugh and Varner's conduct in intercepting and confiscating plaintiff's court docket reports and engineering a reversal of the final appeal decision permitting plaintiff to possess the reports, constitutes retaliation against plaintiff for engaging in the protected activities of filing requests to staff, grievances, the Right to Know Act appeal, and the mandamus petition, in violation of plaintiff's rights under the First and Fourteenth Amendments. (Doc. 43, ¶ 247.)

## B.    Count III

In December 2010, the DOC was ordered to respond to plaintiff's mandamus action. (Doc. 43, ¶ 103.) Thereafter, SCI-Smithfield began changing its practices with regard to outdoor exercise. (Id. at ¶ 104.) "In late March 2011, Defendants Fisher, Hannah, and Robinson implemented and approved orders directing Shift Commanders to open the yard even in rainy weather conditions and directed that officers assigned to yard duty be required to take their posts in the yard, in rain gear, if necessary, despite the rainy conditions." (Id. at ¶ 105.) "After this new policy was put into place, prison staff complained and blamed Plaintiff's grievances and litigation activity for the change." (Id. at ¶ 108.) Inmates were given the choice of going out to yard or staying inside and spending that time on the block, rather than in their cells. (Id. at ¶112.) This is known as "block out." (Id.) "Defendants Fisher, Hannah, and Robinson authorized, approved, and/or implemented a March 23, 2011

7

policy change to the yard/block out schedule for the upcoming season, such that if yard was offered to inmates, block out would not be offered." (Id. at ¶ 114.) "Consequently, if an inmate did not go outside for yard (due to disability, work, call-outs, weather, or other reasons), he would have to stay locked inside his cell." (Id. at ¶ 115.) This schedule substantially increased the number of yard cancellations based on yard capacity, particularly during weekend and evening yard periods. (Id. at ¶ 123.) "When they complained to prison staff about the change, prisoners were told they should 'blame it on the guy who is suing and complaining about yard,' meaning Plaintiff." (Id. at ¶ 125.) "These actions, which had the effect of making both staff and prisoners angry at Plaintiff for his grievance and litigation activities, intimidated Plaintiff and created a chilling effect on Plaintiff's grievance activity and on the prisoner population, generally." (Id. at ¶ 122.)

Defendants Fisher, Hannah and Robinson's alleged conduct of implementing changes in yard/block out practices and in tying these changes to plaintiff's grievance and litigation activities in order to engender anger against plaintiff on the part of staff and prisoners and in order to punish plaintiff and other prisoners, constitutes retaliation against plaintiff for engaging in the protected activities of filing requests to staff, grievances, the Right to Know Act appeal, and the mandamus petition, in violation of plaintiff's rights under the First and Fourteenth Amendments. (Doc. 43, ¶ 250.)

### D.    Counts VI and VII

Plaintiff filed a grievance about the yard/block out changes on March 29, 2011. (Doc. 43, ¶ 126.) Thereafter, plaintiff was approached by other inmates seeking advice on how to

8

word their grievances on the same subject. (Id. at ¶ 127.) Plaintiff shared a modified version, or draft text, of his grievance with inmates who asked him for assistance. (Id. at ¶ 128.)

On April 4, 2011, defendant Smith conducted a search of inmate Thomas Wisniewski, a library legal aid, as he was returning from work. (Doc. 43, ¶ 132.) Wisniewski had a copy of plaintiff's draft text in his possession, which was forwarded to Myers, and Eichenlaub and other security staff for review. (Id. at ¶¶ 132, 135.)

During the first week of April, numerous prisoners filed grievances with wording identical to plaintiff's draft text. (Doc. 43, ¶ 136.) Defendant Holllibaugh reviewed each grievance and defendants Fisher, Hollibaugh, Hannah and/or Robinson ordered Myers and Eichenlaub to conduct an investigation. (Id. at ¶¶ 137-38.) On April 6, 2011, plaintiff was subjected to a body search and his cell was searched and his typewriter and personal and legal property were confiscated from his cell. (Id. at 140-46.) Later that day, he was handcuffed and taken to the Restricted Housing Unit (RHU) and placed in Administrative Custody (AC status) because he had "been charged with or is under investigation for violation of institution rules." (Id. at ¶ 148.)

On or about April 11, 2011, he received a misconduct report written by defendant Eichenlaub and authorized by defendants Myers and Painter charging him with: engaging in or encouraging unauthorized group activity; possession or circulation of a petition; and possession of contraband. (Doc. 43, ¶¶ 152, 165-66.) On April 18, 2011, following a misconduct hearing before defendant Mitchell, plaintiff was found guilty of all three

misconduct charges and sanctioned to ninety days in the Restricted Housing Unit ("RHU") and loss of use of his typewriter. (Doc. 43, ¶¶ 172, 179.) Plaintiff appealed the misconduct. (Id. at ¶¶ 184-85, 192, 195.) On June 27, 2011, after appealing the misconduct charges to final review, plaintiff received "notice from the DOC's Acting Deputy Secretary, John Murray, that the Chief Hearing Examiner had recommended that the case be remanded to the institution for a new hearing and that the Acting Deputy Secretary concurred in this recommendation." (Id. at ¶ 197.) On June 30, 2011, he was informed that he was released from disciplinary custody status and placed in administrative custody (AC) status. (Id. at ¶ 199.) Eventually, all the charges against plaintiff were dismissed. (Id. at ¶ 202.) He remained in the RHU in AC status pending a separation transfer due to a separation between him and inmate Wisniewski. (Id. at ¶ 206.) He was not afforded AC status privileges. (Id. at ¶ 209.) He remained in the RHU at SCI-Smithfield, without privileges or access to his property, from April 6, 2011 to August 9, 2011, when he was transferred to SCI-Mahanoy. (Id. at ¶ 213.) Specifically, he alleges that he was forced to surrender possession of personal property, denied access to legal materials, lost his custody level and housing assignment, lost his prison job, lost extra blanket approval, and was deprived of showers and yard, *inter alia*.

Plaintiff alleges in Count VI, that defendants Fisher, Hannah, Robinson, Myers, Painter, Eichenlaub and Mitchell's conduct in arranging for and levying baseless misconduct charges against plaintiff, in punishing plaintiff through lengthy and unjustified RHU placement and deprivation of property, all without providing meaningful process, constitutes a violation of plaintiff's right to due process under the Fourteenth Amendment to the United

States Constitution. (Doc. 43, ¶ 259.)

In Count VII he avers that defendants Fisher and Hannah's conduct, in keeping plaintiff in the RHU without any AC privileges, after his misconduct charges were dismissed, and in continuing to deprive plaintiff of his property after his misconduct charges were dismissed, all without providing adequate or meaningful process, constitutes a violation of plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution. (Doc. 43, ¶ 262.)

### F.     Count VIII

Defendants Fisher, Hollibaugh, Hannah, Robinson, Myers, Painter, Eichenlaub, and Mitchell's conduct in punishing plaintiff for his communications, constitutes a violation of plaintiff's right to free speech under the First Amendment to the United States Constitution. (Doc. 43, ¶ 262.)

## III.   Discussion

### A.     Retaliation

Defendants seek to dismiss the retaliation claims set forth in Counts II and III for failure to state a claim under the First Amendment. The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-

11

25 (3d Cir. 2000).  To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must

demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse

action" by government officials; and (3) that there is "a causal link between the exercise of

his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d

330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

The filing of prison grievances and the pursuit of litigation constitutes protected

conduct sufficient to meet the first prong.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.

2003).  As to the second prong, to show an "adverse action," the plaintiff must demonstrate

that defendants' actions were "sufficient to deter a person of ordinary firmness from

exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F. Supp.2d 520, 535 (E.D.Pa.

2002) (quoting Allah, 229 F.3d at 225.)  The last Rauser prong requires a prisoner to

establish a causal link between the exercise of his constitutional rights and the adverse action

taken against him.  The court employs a burden-shifting regime to determine whether a

causal link exists.  The prisoner bears the initial burden of proving that his constitutionally

protected conduct was a substantial or motivating factor in the decision to discipline him or

retaliate against him.  See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,

429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a

preponderance of the evidence that they would have taken the same action even in the

absence of the protected activity.  See id.  If defendants prove that they would have made the

same decision absent the protected conduct for reasons reasonably related to a legitimate

penological interest, they will prevail in the retaliation action. See id. at 334.

Defendants contend that plaintiff fails to state a claim with respect to Count II because defendants Smeal, Painter, Myers, Hollibaugh and Varner's interception and confiscation of court docket sheets that concerned inmates other than plaintiff does not constitute adverse action. (Doc. 57, at 17.) The Court disagrees. Plaintiff's alleges that the confiscation of the public court records, followed by the arbitrary reversal of DOC policy concerning an inmate's ability to possess such documents, caused him to feel intimidated, deprived him of his right under state law to access public court records, and undermined his reliance on the finality of DOC final review decisions. Defendants' motion will be denied as to Count II.

Likewise, the motion will be denied with respect to Count III. Defendants frame the adverse action plaintiff experienced as "simply being required to exercise outside rather than on his cell block." (Doc. 57, at 22.) However, plaintiff clearly alleges that when defendants told inmates who became upset over the alteration of the block schedule " 'to blame it on the guy who is suing and complaining about yard,' meaning Plaintiff," staff and other inmates became angry with him, he was intimidated and he was reluctant to pursue grievance activity. (Doc. 43, ¶¶ 122, 125.)

**B.     Due Process**

1.     Liberty Interest

The United States Supreme Court has clarified in its decisions that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement. Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224–25 (1976). However, a state can create a constitutionally-protected liberty interest

13

if the alleged deprivation or change in prison conditions "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Prison conditions are "atypical and significant" when a sentenced inmate may not reasonably expect to encounter such a condition as a result of his or her conviction in accordance with due process of law. Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). As a result, "the focus of this inquiry should not be on the language of a particular regulation, but rather on the nature of the deprivation." Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002). In deciding whether a protected liberty interest exists, a court must engage in a fact-specific inquiry into "the duration of the . . . confinement and the conditions of that confinement in relation to other prison conditions." Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003).

Pennsylvania DOC Policy states that administrative custody is "a status of confinement for non-disciplinary reasons, which provides closer supervision, control, and protection than is provided in general population." (DC–ADM 801(IV)(A)). Disciplinary custody is the "maximum restrictive status of confinement to which an inmate guilty of a Class I misconduct may be committed." (DC–ADM 801(IV)(H)). The conditions of which plaintiff complains of while housed in disciplinary and administrative custody, from April 6, 2011, to August 9, 2011, did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. Plaintiff complains that the atypical and significant conditions imposed on him while he was in the RHU included, among other things, loss of personal property, denial of access to legal materials, loss of custody level, housing status

14

and housing assignment, loss of prison employment, set back from becoming eligible for promotional transfer, deprivation of showers and yard, and limited law library access. These conditions, however, do not satisfy the <u>Sandin</u> standard, as it is not unusual for inmates in a number of circumstances to find themselves subjected to the conditions to which Buehl was also subjected while in administrative custody. <u>See Griffin</u>, 112 F.3d at 708 (holding that "it is not extraordinary for inmates in a variety of circumstances to find themselves exposed to the conditions to which [plaintiff] was subjected [while in administrative custody in Pennsylvania prison]"); <u>Allah v. Seiverling</u>, 229 F.3d 220, 224 (3d Cir. 2000) ("[P]lacement in administrative confinement will generally not create a liberty interest."). Moreover, his limited stay of 125 days in administrative and disciplinary custody in the RHU were not outside the norm.

It is not unusual for inmates to be subjected to conditions similar to those placed on administrative custody inmates "for a substantial period of time." <u>Griffin</u>, 112 F.3d at 708. As the Third Circuit has held, "[g]iven the considerations that lead to transfers to administrative custody of inmates at risk from others, inmates at risk from themselves, and inmates deemed to be security risks, etc., one can conclude with confidence that stays of many months are not uncommon." <u>Griffin</u>, 112 F.3d at 708 (holding that placement in administrative custody for a period as long as 15 months does not create an atypical and significant hardship); <u>see also Fraise</u>, 283 F.3d at 522–23 (holding that indefinite placement in a harsh form of administrative detention "designed to isolate and rehabilitate gang members" and its accompanying restrictions did not impose an atypical and significant

15

hardship); <u>Torres v. Fauver</u>, 292 F.3d 141, 151–52 (3d Cir. 2002) (finding placement in administrative custody for 120 days did not deprive plaintiff of a protected liberty interest); <u>Jones v. Baker</u>, 155 F.3d 810, 813 (6th Cir. 1998) (confinement in administrative custody for two and one-half years did not implicate a state-created liberty interest); <u>Wilson v. Hogsten</u>, 269 F. App'x 193, 195 (3d Cir. 2008) (placement in administrative detention "during the pendency of the ten-month internal investigation, and for ten weeks afterward, is not a cognizable constitutional claim"); <u>Wilkins v. Bittenbender</u>, No. 06–2827, 2007 WL 708993, at *2 (3d Cir. Mar.7, 2007) *(per curiam)* (over ten months in administrative custody did not implicate a liberty interest); <u>Riley v. Carroll</u>, 200 F. App'x 157, 159 (3d Cir. 2006) (six months in administrative custody did not implicate a liberty interest); <u>but</u> <u>see</u> <u>Shoats v. Horn</u>, 213 F.3d 140, 144 (3d Cir.2000) (eight years in administrative custody implicated a liberty interest).

With respect to disciplinary custody, the <u>Sandin</u> Court found that "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and general population inmates experienced "significant amounts of 'lockdown time.' " <u>See</u> <u>Sandin</u>, 515 U.S. at 486. The Third Circuit, in applying <u>Sandin</u>, has held that periods of confinement in disciplinary custody exceeding the number of days that Buehl was in disciplinary custody does not implicate a state-created liberty interest. <u>See Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months in disciplinary custody "does not, on its own, violate a protected liberty interest"); <u>Sims v. Vaughn</u>, 189 F. App'x 139, 141 (3d Cir. 2006) (67–day

placement in the RHU did not involve atypical or significant hardship); <u>Davis v. United</u>

<u>States</u>, 182 F. App'x 105, 108 (3d Cir. 2006) (60 days in disciplinary custody did not

constitute atypical or significant hardship); <u>see also</u> <u>Mitchell</u>, 318 F.3d at 532 (stating that the

differences between administrative custody and disciplinary custody under the DC–ADM are

"marginal" and do "not appear to cross the constitutional line," though reversing district

court's dismissal because the record needed to be more fully developed); <u>Torres</u>, 292 F.3d at

151–52 (placement in disciplinary custody for 15 days did not violate a protected liberty

interest). Thus, Buehl's exposure to the conditions of administrative and disciplinary custody

for 125 days did not deprive him of a state-created liberty interest.

### 2.     Deprivation of Property

" '[A]n unauthorized intentional deprivation of property' " by prison officials does not

violate the Due Process Clause " 'if a meaningful post deprivation remedy for the loss is

available.' " <u>Monroe v. Beard</u>, 536 F.3d 198, 210 (3d Cir. 2008) (quoting <u>Hudson v. Palmer</u>,

468 U.S. 517, 533 (1984)). Here, the prison had an administrative grievance process for

Buehl's deprivation of property. <u>See</u> <u>Tillman v. Lebanon Cnty. Corr. Facility</u>, 221 F.3d 410,

422 (3d Cir. 2000) (holding that prison's grievance program and internal review provided an

adequate postdeprivation remedy to satisfy due process). Because adequate remedies were

available to Buehl to address the unauthorized deprivation of property, defendants' motion to

dismiss will be granted as to this claim.

### 3.     Substantive Due Process

" 'If a constitutional claim is covered by a specific constitutional provision. . . the

17

claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997)); see also Albright v. Oliver, 510 U.S. 266, 272 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.' ") (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)) (footnote omitted).  Buehl frames his substantive due process claim as follows: "Defendants' [sic] carefully planned and imposed punishments for his protected activities; how Defendants falsified reports and conspired with each other in order to carry out their plan; and how Defendants, despite having multiple opportunities to cease their retaliatory and punitive actions, chose instead to continue their course of conduct." (Doc. 58, at 20.)  As noted by defendants, these allegations "are clearly governed by the First Amendment which prohibits retaliation for protected conduct. See Rauser v. Horn, *supra*." (Doc. 61, at 14.) Consequently, plaintiff's substantive due process claim will be dismissed.

## C.    Free Speech

An inmate's First Amendment rights are limited and may be curtailed depending upon the prison's legitimate penological objectives. See Newman v. Beard, 617 F.3d 775, 781 (3d Cir. 2010) ("it is settled law that an inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system'") (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "When a prison

regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1978)  Since the Turner decision, the Supreme Court has consistently applied the Turner standard to prisoners' constitutional rights claims.  See Shaw v. Murphy, 532 U.S. 223 (2001) (considering a ban on inmate-to-inmate correspondence that contained legal advice); Washington v. Harper, 494 U.S. 210 (1990) (applying Turner to a substantive due process challenge to the involuntary administration of psychotropic drugs to a prisoner who had a serious mental illness); O'Lone v. Shabazz, 482 U.S. 342 (1987), (upholding the constitutionality on First Amendment grounds of a prison policy that prevented Muslim inmates from attending a weekly congregational service).

Based on the argument set forth in Buehl's sur reply, that "Defendants had no legitimate penological reason to punish Mr. Buehl for communicating with other prisoners regarding the yard/block out change.  See Am. Compl. ¶¶ 128-202," defendants' motion to dismiss the First Amendment free speech claim will be denied.

## IV.   Conclusion

Based on the foregoing, defendants' motion to dismiss will be granted in part and denied in part.

An appropriate order follows:

**BY THE COURT:**

s/**James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:      September 28, 2012

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER BUEHL,** | : | **CIVIL NO. 3:CV-10-2288** |
| Plaintiff, | : | |
| | : | **(Judge Munley)** |
| v. | : | |
| | : | |
| **JON FISHER, et al.,** | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 28th day of September 2012, upon consideration of defendants' motion to dismiss (Doc. 51) and in accordance with the foregoing memorandum, it is hereby **ORDERED** that:

1. Defendants' motion (Doc. 51) is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED with respect to Counts VI and VII.

3. The motion is DENIED with respect to Counts I, II, III and VIII, and defendants shall file an answer or appropriate pretrial motion within twenty days of the date of this order.

BY THE COURT:


s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**